All right, Mr. Peacock. You're up. Thank you, Your Honor. Good morning, Your Honor. Good morning. May it please the court, my name is Jack Peacock and I represent Mr. and Mrs. Clark. What we have here today is a 12 v. 6 situation where their lawsuit was dismissed in the district court. And it appears from the judge's opinion that it was dismissed because it didn't have the language. As a matter of fact, on page 13 of the district court's memorandum, the court stated that plaintiffs have not alleged that the damages they suffered were a reasonably foreseeable result of defendants inducing them to send application materials for a loan modification program, HAMP, for which they could never qualify. Okay, well, let's get down to the nitty gritty here. What we did allege was that this series, as the Fifth Circuit has said before, is a Kafkaesque saga when these homeowners are applying for loan modifications. It's just like a windmill. It just keeps going forward with more and more paperwork, more documentation, more this, more that. I know you've heard this hassle before probably a gazillion times. So, anyway, what we did plead was that all of these things that they went through were a proximate cause of their damages. Well? What are their damages? Mental anguish, loss, the value of lost time, trying to remedy all of these issues, attorney's fees. Okay, as I understand it, your client made an application with Wells Fargo or whoever it was to adjust, to get some relief from the mortgage they were paying. Yes, Your Honor. All right. And they were ultimately, and they had to supply a lot of information to get that. Yes. And then they were denied. That's correct. And then the Wells Fargo or the bank people, the defendants, suggested, well, you didn't make that, but we do have a program that you may succeed in. Yes. And that was the HAMP, is that right, the HAMP program? Yes. But at that time, it was illegal in Texas, or against the Texas Constitution, to promote such a program in the state of Texas, correct? Well, the court stated that in the memorandum. I think that the reality is that the state's attorney general had issued an opinion that the loan modifications were possible with home equity loans, but a lot of the lenders were still not doing them. I thought that was the basis of your fraud. Maybe I'm misunderstanding your case. I thought the basis of your case was the fact that they were a debt collector because they sought information from your clients. Yes. Knowing that they could not provide the service for which the so-called documentation was required. Well, that's close, Your Honor. Tell me what it is. The reality, well, that's the position that everyone has taken, but I think that the reality is that this lender would not do it because of, and had a policy of not doing it because of the potential problem. I think it was an imaginary problem based upon the attorney general's opinion, but that hadn't been briefed. It's not in here. Tell me what your claim is here. What did they do wrong? What they did wrong was asking us for information over and over and over again for a HAMP plan that they were never going to give them. Okay. Tell me at what point did they furnish this information to the defendant? They had to furnish virtually all of the information that HAMP required when they applied for the first one, correct? Is there any information they specifically provided in HAMP that they did not provide in the initial application for loan modification? Well, I don't know all the details yet because we were not able to do discovery. That's your client. Yes, but what I can tell you is that in the fall of 2013, they submitted everything, and I think it was September, and then again in October they were asked to submit everything, and I believe it was for a different. October when? 2013. Okay. And then again in December, that's when they got the letter that said, oh, by the way, we can do this HAMP for you, which we all know is not true. Did they have to? Are you saying that they had to furnish additional information? Yes. What additional information did your client furnish that was not required earlier? I don't know the details on that, Your Honor. Well, that's essential to your case because you're claiming that HAMP is the basis of your fraud, and you're claiming that the fraud is that they required information knowing that they could not provide the service they were promising. Yes. And you can't tell me when they provided the information with respect to the HAMP program or what they provided for in HAMP. Well, I can tell you that they provide all their personal information. Well, they provided that earlier. And all their income information, their documentation. Was that any different from what they had earlier given? I don't know that. So, I mean, if they gave it, and that's what it appears to me here, they gave all the information earlier, and they didn't need much information with respect to HAMP. They already had that. So, the fact that they acquired the information in a non-HAMP situation destroys the basis of your HAMP claim. That is, if they solicited information, consumer information, for the purposes of collecting data, for purposes of getting consumer information. Well, I mean, it's undisputed that we supplied additional information. Now, what that detailed information was, I don't have all of that. Well, that's your claim. You're claiming that that was consumer information, and you don't know what it was. But that wasn't the reason the case was dismissed, though, Your Honor. I think all I had to show in my pleadings was that I had a plausible claim. But you didn't allege that, and you didn't allege it, did you? Allege what, Your Honor? What information you had to furnish. I didn't detail the actual documentation that they furnished earlier and then had to furnish again and furnish a third time. Okay. I'm sorry, go ahead with your argument. I'm sorry, Your Honor? I said go ahead with your argument. Well, I think where we are now is based upon, as I understand the district court's memorandum of opinion, first of all, let me just lay this premise, this preface, by saying typically in our pleadings, and I believe in most pleadings, you have the names of the parties, the jurisdiction, the facts, and then your theories of recovery, and then your damages. Well, the court stated here, and I think what is making it, raising the question for me, when she stated that plaintiffs have not alleged that the damage they suffered or reasonably foreseeable result, well, as the court knows, there's different standards. One is proximate cause. One is a reasonable foreseeable damages, and they're different for different theories of recovery. Now, so do we need now, as I understand the court's decision here, to change the form of our pleadings to say that, well, we have this theory of recovery, and we're asking for these damages relating to this theory of recovery. And then when we go to the next theory of recovery, then we have these damages relating to this theory of recovery. Now, we can do that, but that's unusual as far as… I think the confusion here is are we extending Ashcroft v. Iqbal in the Twombly case beyond whether the claims are plausible in their face to a matter of form. If, for example, there was confusion on what damages related to what claims, I think that should be handled with a 12E motion for a more definite statement, not a dismissal, dismissal of our lawsuit over how things were arranged. I think our duty under Rule 8 and Ashcroft v. Iqbal and Bell Atlantic v. Twombly is to have a plausible case. Is it plausible on its face? I think that's our only duty. Well, why don't you tell me what your case is? What is your claim? Our claim is that what's left of our claims, the one that we appealed and believe that we have the best chance to prevail on, is this issue of having to go through… The rule, as you may know it under the TDCA, Texas Debt Collection Act, is that a lender may not use any false representation or deceptive means to collect a debt or obtain information concerning a consumer. And it's that last part that we're hanging our hat on here today, that they used a false representation, that you could have this through HAMP, or it could be better described as a deceptive means, to obtain information concerning a consumer. And we all know, based on the briefs and it's undisputed, that as soon as they got all this information, they put them in foreclosure. Well, let me ask you this. I mean, you're on a 12B6 dismissal. You filed the first complaint, your support dismissed, and then allowed you to re-plead, right? Yes. All right, then you filed the second one, amended and so forth, and that's the one that's up here now. The contention was that the second amended complaint failed to connect your claim of the reasonable foreseeability, et cetera, et cetera, et cetera. So tell us in the time why what you did plead you feel fits 12B6 and shouldn't have been dismissed. Because it states a claim, a violation of the TDCA, and in particular this section that I just read. And it states that as a proximate result of the violation, my client suffered mental anguish, psychic trauma, the loss of value of time trying to fix all this, and attorney's fees. So the damages you claim were that which you just said. That's correct, Your Honor. So your clients at the time of filing the claim were still in the home but not paying any mortgage payments. Is that right? That's correct, Your Honor. They accelerated the loan. We can't make payments. If we do. So they've been in the dwelling how long without any payment on the dwelling? Well, the lender says that the last payment that they have a record of, I think, is 2011. So for six years they've been in the dwelling without any payment, and so this claim has been pending on this HAMP fraud claim. I mean, that's what you're asserting and then asserting a claim for mental anguish, et cetera, psychic damages. Sure. But to be fair, I'm not judging that. I'm just trying to understand because you got the second, not the second bite, but it was dismissed first for 1201, then the district court allowed you to re-plead in theory that, you know, when you allege fraud claims, you have to plead some particularity beyond just the notice of pleadings, and I was just trying to get you honed in, and I think you've answered my question of the basis of what you did differently in the amended petition that you didn't file the first time. Well, we didn't plead fraud, so we don't have complete specifics of who what and when and where. I stand corrected. But we did try to change things in order to accommodate what we believe that the court wanted. Your assertion is that you've pled enough to stay in court and anything else you can't know or won't know unless until you have this coverage. Is that the bottom of the crux of what you're saying? That's the bottom of the crux of what I'm saying. Well, that's a good segue to counsel opposite. So you've reserved your rebuttal time. Thank you, Your Honor. Thank you. All right. Mr. Luce. May it please the Court. My name is Tom Luce. I represent the affiliates Deutsche Bank and Wells Fargo. But just touching on something, Judge Stewart, that you just closed out on, they did get a chance to amend their complaint. The allegations, the factual allegations in their second amendment complaint, remained identical to their factual allegations in their first amendment complaint. And when I say factual allegations, I'm talking about paragraphs 7 through 25. That's their fact section of their complaint. As I was preparing for argument, one of the things I looked at is what was different. The only change that I could find that's relevant to this appeal is in paragraph 32. And paragraph 32 is the only paragraph that I'm aware of in their complaint, and I looked through it, where they say that the appellees were doing something to obtain information concerning a customer. And that's language that comes directly from the statute. And in paragraph 32A, they allege that the defendants, appellees, used false representations or deceptive means to collect a debt and obtain information concerning a customer. That's a direct paraphrase of the statute. That is the formulaic recitation of elements of a cause of action. That's not sufficient. And to back up one step, there is only one claim in this appeal. It's a TDCA claim. The district court, in its first memorandum opinion, correctly held that allegations about events that occurred before August 28th of 2012 weren't sufficient to support their TDCA claim because those events occurred more than two years before the clerks filed suit. So a claim based on events before August of 2012 can't support a claim. That claim would be time-bombing. So that leaves the clerks with very limited allegations to support the claim that they've brought in this appeal. Those allegations are in paragraphs 22 to 25 of their second amended complaint. And I want to talk about those a little bit later, but just to give you a sort of signpost, there's three reasons why this court can affirm the dismissal of their claims. The first is the district court's reasoning, which is there's no causal connection between the alleged wrongdoing and the damages that the clerks have served. Secondly, all of the alleged misrepresentations concerned a loan modification or a proposed loan modification. And under this court's precedent, those kind of communications are not actionable under the TDCA. The third basis would be that the clerks have not alleged an affirmative statement that was false or misleading. And this court has held that to be actionable under the TDCA, that's a requirement. On the causal connection, there's already been some discussion. Under the TDCA, damages must be as a result of an alleged violation. And in Brown v. Oklahoma Bank, the damages must be the reasonably foreseeable result of a violation. You'll find the clerk's damages allegations in paragraphs 36 and 43 of their Second Amendment complaint, but there aren't any factual allegations to tie those alleged damages to any alleged violation of the TDCA. In paragraph 36, what they wrote is, pursuant to such violations of law, plaintiffs are entitled to relief, including. And then what follows is just a listing of categories of kinds of damages. And looking at paragraph 36 specifically, and I think paragraph 43 has about the same kind of recitation. They say they're entitled to recover actual damages, economic damages, loss of credit, mental anguish, and additional interest. That listing of just types of damages that are completely untethered to any kind of allegation of fact is like or akin to a formulaic recitation of the elements of a cause of action. Again, that's not sufficient under 12b-6. It's merely stating a conclusion about types of damages, not tying any damages to an alleged act by defendants. The district court got it right. They failed to state a claim because they didn't tie their damages to any wrongdoing alleged by my clients. Turning now to the loan modification discussions and the holding this court is holding in Thompson. This is the second reason why I think this court can affirm the district court's dismissal. In Thompson, what the court wrote is, and I'm quoting here, communications in connection with the negotiation of a loan do not concern the collection of a debt, but instead relate to its modification, and thus they do not state a claim under section 392.304A19. That's the section of the TDCA that the Clarks have appealed in this case. Loan modification discussions do not state a claim under that provision of the TDCA. And if you look back at the Thompson opinion, the allegation, the misrepresentations alleged in that case were substantially the same as what the Clarks have alleged here. In Thompson, the borrowers alleged that the lender represented borrower's application was under review. That's the same as the allegations the Clarks make. In Thompson, they said the bank needed or received documents. Again, the Clarks make that same allegation here. Thompson involved a third alleged misrepresentation that a trial payment plan was being created. That's not at issue here. But what the Clarks allege, in addition to those first two, is that they received a December 13th letter. And they seem to put significant weight on that letter. They call that letter a, quote, letter of eligibility for a HAMP modification. If the court takes a look at the letter, however, there's really only one substantive sentence in that letter. And what that sentence reads is, now that we've received your documents, our loan processing team will carefully review what you've submitted to determine if you are eligible for mortgage payment relief under the HAMP program. What was the date of that loan? That's December 13th, 2013. Within the statute of limitations period? Yes, sir. Events prior to August of 2012 would be more than two years before they filed suit. So there are very limited allegations about what occurred in 2013. What the Clarks alleged is they requested another loan modification. They submitted, and to your questions earlier, Judge Dolly, what they've alleged in their complaint generally about what information did they give to the bank. They say they submitted an application. The application's not in the record. I don't know what's in that application. They say they submitted requested documents. They don't say what documents they submitted. They don't say what, if any, was different between things that they did going back as far as 2007 and the events that I think are relevant to this appeal, which occurred in 2013. In 2013, they say they requested another modification. They submitted an application and documents. They received a letter from the bank saying, a letter about a short sale that they were told to disregard. They received an acknowledgment that the bank had received the documents and a request for additional information, and then they received this December 13th letter that said, We've got your documents. We're going to review them to see if you're eligible. And then a week later, another letter from the bank saying, We can't modify your loan. We don't do that because of provisions of the Texas Constitution. The holding in Thompson, based on similar representations, was that those things don't support a claim under the TDCA. Thompson's not the only case that has so held by this court. The two cases that I would draw the court's attention to are a case called Bass Knight and another case called Chavez. In Bass Knight, the borrowers told their servicer that their lender didn't participate in loan modifications. Notwithstanding that, the servicer encouraged them to apply and said, You're going to be eligible. The loan was denied because the servicer didn't participate in loan mods. This court held that that was not a sufficient allegation to support a claim under the TDCA. Similarly in Chavez, the borrower alleged that the lender misrepresented that he was qualified for and would be approved for a loan modification when the lender knew that he was not eligible for a loan modification. Very similar allegations to what we have here. In Chavez, this court affirmed the 12B6 dismissal of a claim based on allegations like that. The third basis this court can affirm is that there's no affirmative statement that was false or misleading alleged by the Clarks. If you walk through the allegations from paragraph 22 to 25 and then a couple of allegations later that I want to discuss, there simply isn't an allegation that a statement was made that was false or misleading by the bank. The closest they come, in my opinion, is in paragraph 33 where they say defendants deceptively instructed and encouraged plaintiffs to apply for the HAMP loan modification and represented that the loan was in underwriting even though ASC, which is Wells Fargo, did not really modify home equity loans. I might be paraphrasing a little bit there. Again, when you look back at their factual allegations, what they say in paragraph 33 is merely conclusory or merely a formulated recitation of the elements of their claim. Defendants deceptively instructed. There's no factual allegation that shows what the defendants told them or didn't tell them in terms of applying for a loan. Again, what their allegations really said is we wanted a loan. We submitted the application and the documents. You, the lender, said you'd received it. You requested more information. There is no allegation in this case that the lender told the Clarks you are eligible for a HAMP loan or told the Clarks you will receive a loan modification. In fact, the December 13th letter says we're going to review your documents to determine if you are eligible for a loan modification under HAMP. There simply is no affirmative statement that is false or misleading that the Clarks alleged in this case. Again, their allegations within the relevant time period are very limited in this case. So there are three bases on which this Court could affirm the district court's dismissal. Any one of which would be sufficient, and the Court ought to affirm. I have some additional time, but those are the issues that I wanted to cover with the Court. If the Court doesn't have any questions of me, I will release my remaining time to the Court. All right. We've got it. Thank you. Thank you, Your Honor. Back to you, Mr. Peacock. Thank you. I know that the Bass Knot and the Chavez decisions are unpublished, but you did not respond to them and you didn't talk about them in your reply brief. Do you want to talk about them or give us reasons to distinguish them? I didn't address those. Honestly, I didn't think that they were relevant to what we have here. I don't remember all the details on the Bass Knot case and the Chavez case, but I don't think that they are on point with what we have here. What is the fraud allegation here? What is the fraudulent statement or misrepresentation? Let me go to their letter. And we didn't allege fraud, by the way. What's the actionable statement? All right. Their letter of December 13, 2013 is attached as Exhibit D to our complaint. They start out by thanking Mr. Clark for applying for the Home Affordable Modification Program. And they say in part here, Now that we've received your documents, our loan processing team will carefully review what you've submitted to determine if you are eligible for mortgage payment relief under the Home Affordable Mortgage Program. And then the letter goes on to say, I will follow up with you by Sunday, January 12, to outline the next steps in the process and address any additional documents that might be needed to complete our review. While we are reviewing your information, and if permissible by state law, your home will not be referred to foreclosure or sold at foreclosure sale. The reality here is they never were going to provide Mr. and Mrs. Clark with a loan modification. I don't see, those to me are less positive statements than what were issued in Bass IX and Chavez. And we said you do not have a cause of action under Section 19, I forget the number, but we said even with those statements, you don't have a cause of action. Well, under those cases, though, our complaint really didn't go to, let me see if I have it here. Yes, I did. Here it is. There's a difference, and it is a material difference. In those cases, our claim in part under the TDCA was whether there was any false representation or deceptive means to collect a debt. That's not the basis of this theory of recovery. But in the letter you just read, Exhibit D, what in what you just read are you alleging is the misleading or false statement? Well, collecting all this information, we're going to stay in touch with you, we're going to look at this review, we're going to work together. The whole thing is misleading. Well, it says, and you stopped reading, the sentence after you stopped reading says, as a reminder, it's important for you to continue making your regular mortgage payments until you hear from us. So, I mean, you didn't read that in line. But I'm trying to say what in what you read is the actionable language from just, you know, it looks like a benign letter, you know, written acknowledging you got the papers, et cetera, et cetera. So what from this and in your amended pleadings denotes the misleading part? I mean, I heard you say, well, they never meant to. But what's the language in the complaint over here that is the defining language that keeps you in court? That's all I'm asking. Okay. Well, I think it's the paragraph here, the fact that it's the district court didn't disagree with this. We may disagree with the district court. That's what I'm getting at. I'm not sure I agree with the district court. I'm asking you how you distinguish our case law. Well, Bass Knight and Chavez were not turning on the issue of obtaining information. So you're saying if you apply for a HAMP loan for which you do not qualify and the bank continues to ask for information, then that's actionable under this statute stand-alone. And what's your best case for that? Well, there are no cases. Exactly. There are none. So we don't have any precedent on that. Well, I – None that I know of. That's probably a better way to say it. How many cases have you been counseled on like this? With this theory of recovery or with homeowner cases? Homeowner cases. Probably 15 years' worth. Well, since Thompson, including Thompson. Well, and Thompson was one of my cases. Right. And Judge Graves wrote a concurring opinion there. The majority did not agree with it. Okay. But since Thompson, how many cases have I had? In this court. Oh, in this court. Probably, I'm going to say 12 or 15 or something like that. That would be my thought. There's been a number of them. So I'm sorry. It looks like I'm out of time, but I would like to answer your question, Your Honor, if I may. Go ahead. The tenor of this letter that's Exhibit D attached to the petition clearly, in my view, indicates that it was misleading and clearly a violation of the statute. Okay. All right. We've got you. All right. Thank you, Mr. Peacock and Mr. Luce, for the briefing and argument.